Alejandro **GUERRA**, Appellant,

v.

**TEXAS EMPLOYERS INSURANCE ASSOCIATION, Appellee.**

**No. 689.**

Court of Civil Appeals of Texas, Corpus Christi.

May 18, 1972.

Edwards & De Anda, Philip Maxwell, Corpus Christi, for appellant.

Keys, Russell, Watson & Seaman, James C. Watson, Corpus Christi, for appellee.

OPINION

SHARPE, Justice.

This appeal is from an order of the 94th District Court of Nueces County, Texas, rendered after non-jury trial, sustaining the plea of privilege of defendant-appellee to be sued in Dallas County, Texas. Findings of fact or conclusions of law were not requested or filed.

Alejandro Guerra brought suit in Nueces County to set aside a compromise settlement agreement which he entered into with the defendant T.E.I.A. The defendant duly filed a plea of privilege to be sued in the county of its domicile, Dallas County, Texas. Plaintiff timely controverted same relying on Subdivision 7 of Article 1995, Vernon's Ann.Civ.St. (Fraud & Defalcation).

The evidence shows that on June 17, 1964, plaintiff-appellant Guerra sustained a severe injury to his right knee and leg in an accident while in the employ of Elk Well Service, for which company appellee was workmen's compensation carrier. The injury consisted of a severe comminuted fracture of the upper tibia, a multiple comminuted fracture of the tibial plateau, and avulsion of the medical collateral ligament.

Guerra was taken to a hospital where he was given emergency treatment by Dr. Jackson E. Upshaw. Within a year of the accident plaintiff had a conversation with Dr. Upshaw in Nueces County, Texas during which Dr. Upshaw told Guerra that he would have approximately fifty (50%) per cent disability in his right leg as a result of the accident. Dr. Upshaw also told plaintiff that he would be able to return to work in about two or three weeks. Thereafter, Dr. Upshaw issued a report dated January 20, 1965 addressed to defendant at its offices located in Nueces County, Texas. The report stated that the plaintiff would have approximately fifty (50%) per cent disability affecting the function of his leg below the hip as a result of the injuries sustained. On or about February 10, 1965, the plaintiff was contacted by Julian Ernest Wells, an adjuster for T.E.I.A. and a meeting was arranged in order to discuss a settlement of plaintiff's claim for compensation as a result of the injuries he sustained. During the meeting with the defendant's adjuster, the plaintiff was told that Dr. Upshaw's disability rating contained in the report addressed to the defendant limited the amount which could be paid to the plaintiff as compensation for his injuries. The adjuster drew up a mathematical analysis based on the fifty (50%) per cent disability rating given by Dr. Upshaw in his report. Mr. Guerra thereafter settled his case for four thousand ($4,000.00) dollars in addition to the compensation of $1,190.00 which he had already been paid. The total amount paid to Guerra represented a disability of approximately 67½% to the leg. Future medical benefits were left open.

The record reflects that the defendant's adjuster and the plaintiff were both relying upon the representations of Dr. Upshaw as being true at the time they entered into the compromise settlement agreement. This is shown in part by excerpts from the statement of facts setting out some of the testimony of Guerra and Wells.

Guerra testified in part as follows:

"Q Now then, Mr. Guerra, did he (Wells) tell you that he was basing the amount upon the disability that the doctor had given you?

A Yes, sir.

\*　\*　\*　\*　\*　\*

Q Did you rely on the statement of Dr. Upshaw as being true when you were dealing with Mr. Wells?

A Yes, sir, that is why I signed them.

\*　\*　\*　\*　\*　\*

Q Now, Mr. Guerra, in all of your dealings with Mr. Wells on February 10, 1965, were you relying on the statement of your disability made to you by Dr. Upshaw as being true?

A Yes, I thought they were all right, that's why I signed it.

Q Would you have entered into the compromise settlement that you did if it had not been true?

A No, sir."

Wells testified concerning Dr. Upshaw's report in part as follows:

Q In other words, both you (Wells) and Mr. Guerra were relying on Dr. Upshaw's report at the time you entered into this compromise settlement agreement?

A Yes, sir, very much so."

Plaintiff's testimony was to the effect that since the date of the accident on June 17, 1964, he had not been able to work in any form of gainful employment and had undergone five operations as a result of the accident. Some two years after the compromise settlement agreement Dr. Upshaw wrote a letter, hereinafter set out in full, which stated in substance that Guerra was then one hundred (100%) per cent disabled insofar as his ability to work is concerned. This letter was written by Dr. Upshaw upon plaintiff's request because

Guerra was attempting to get assistance from the Texas Education Agency under provisions of the Social Security Act.

Plaintiff's suit to set aside the compromise settlement agreement is primarily based upon the allegation that Dr. Upshaw's initial disability rating of 50% constituted legal fraud. Plaintiff-appellant, Guerra, asserts four points of error as follows:

(1) The trial court erred in sustaining the defendant's plea of privilege to be sued in Dallas County, Texas, because the plaintiff clearly proved a cause of action existing in Nueces County, Texas, as required by Subdivision 7 of Article 1995, Texas Revised Civil Statutes (1925), as amended. (2) There is no evidence to support the trial court's order sustaining the defendant's plea of privilege to be sued in Dallas County, Texas. (3) There is insufficient evidence to support the trial court's order sustaining the defendant's plea of privilege to be sued in Dallas County, Texas. (4) The trial court's order sustaining the defendant's plea of privilege to be sued in Dallas County, Texas, is against the overwhelming weight and preponderance of the evidence.

Plaintiff's primary contention is that in order to sustain venue under Subdivision 7 of Article 1995, V.A.C.S. (the "fraud" exception) "a plaintiff need only show that a transaction which might constitute an actionable fraud occurred in the county where suit was filed." Here, the plaintiff relies on older cases which hold in substance that, "In a venue case alleging fraud in a named county, the pleader has the burden of establishing only a prima facie case of fraud committed in such county by producing proof of the existence of the elements of fraud perpetrated in such county." See Sterling Mut. Life Ins. Co. v. Larson, 99 S.W.2d 1013 (Tex.Civ.App., Amarillo 1937, n. w. h.). See also, Griffin v. Linn, 3 S.W.2d 148 (Tex.Civ.App., Amarillo 1928, dis'm) and Edmonds v.

White, 226 S.W. 819 (Tex.Civ.App., Texarkana 1921, n. w. h.).

Later cases, however, announce the rule that the plaintiff must produce extrinsic evidence sufficient to establish his allegations by a preponderance of the evidence. See Banks v. Collins, 152 Tex. 265, 257 S.W.2d 97 (1953); Young v. Young, 340 S.W.2d 521 (Tex.Civ.App., Waco, 1960, n. w. h.); Texas Industrial Investment Corporation v. Taber, 309 S.W.2d 475 (Tex.Civ.App., San Antonio, 1958, dism'd) (Subd. 7 case); and Texas Employers' Ins. Ass'n v. Shelton, 237 S.W.2d 719 (Tex.Civ.App., Amarillo, 1950, n. w. h.).

■ The correct rule applicable to subdivision 7, Article 1995, V.A.C.S. is set out in McDonald, Texas Civil Practice, Sec. 4.-13, Vol. 1, pages 465, 466, as follows:

" . . . Three venue facts must be established, each by a preponderance of the evidence:

(I) That the fraud or defalcation did in fact occur. The evidence must establish all elements of an actionable fraud or defalcation, including the fact that the plaintiff sustained some actual damage as a result of such wrong. A showing of some damage is required. But given a showing of some damage, it is not necessary to show the amount thereof.

(II) That the fraud or defalcation was committed by the defendant or by one for whose acts he is legally responsible. This fact usually will develop automatically from proof of the first fact. It is a separate venue fact, however, for the defendant need not participate personally or be within the county at the time the fraud is committed if his legal responsibility therefor is established. Where the fraud was not committed or participated in by the defendant or one for whom he

is legally responsible, venue cannot be maintained under this exception.

(III) That the fraud or defalcation occurred in the county of suit. . . . "

In addition, McDonald states that the preponderance test supersedes earlier decisions allowing a mere prima facie showing. See Section 4.55 at page 613, and cases therein cited. In that Section McDonald also says that: "Moreover, references in appellate courts to the proof of venue facts prima facie may be justified on the basis of the question before the reviewing court. In the trial court, to defeat the plea, proof by a preponderance of the evidence is required. But if the trial court overrules the plea, an appellate court will not disturb the decision if it is supported by evidence sufficient to establish the venue fact prima facie."

T.E.I.A. does not dispute the fact that it was legally responsible for Dr. Upshaw's acts. The testimony of the plaintiff and the stipulations of the parties establish that Dr. Upshaw was the agent of defendant. Furthermore, all the evidence introduced at the plea of privilege hearing demonstrated that all representations made by Dr. Upshaw both to the plaintiff and defendant were made in Nueces County, Texas. It thus appears that two of the essential venue facts have been satisfied by plaintiff, i. e. venue facts II and III, as stated by McDonald. In the instant case, therefore, our primary remaining consideration relates to venue fact Number I, concerning the elements of fraud.

An analysis of cases dealing with the doctrine of "legal fraud" seems to place the instant factual situation or the fringe of the doctrine's application. See, Texas Employers' Insurance Association v. Maynard, 362 S.W.2d 128 (Tex.Civ.App., Austin, 1962, ref. n. r. e.); Duncan v. Texas Employers' Ins. Ass'n, 105 S.W.2d 403 (Tex.Civ.App., San Antonio 1937,

dism.); and Graves v. Hartford Accident & Indemnity Co., 138 Tex. 589, 161 S.W.2d 464 (Tex.Comm'n App.1942, opinion adopted). The legal fraud theory, however, as enunciated in the abovementioned cases, is dependent on the fact that the physician's statements be untrue. In the case at hand, plaintiff-appellant had the burden of either obtaining a finding or conclusively establishing that his disability was greater than that for which he had been paid and particularly that it was greater than the 50% rating to his leg given to him by Dr. Upshaw two years earlier. This he failed to do. This venue cause was tried before the court. There were no findings of fact and conclusions of law. In the absence of findings of fact and conclusions of law, the judgment must be reviewed under assumption that trial court found every issuable fact in support of the judgment. Banks v. Collins, supra; James v. Drye, 159 Tex. 321, 320 S.W.2d 319 (1959); Drexler v. Architectural & Commercial Sales, 375 S.W.2d 550 (Tex.Civ.App., Corpus Christi, 1964, n. w. h.); McNeil v. Williams, 388 S.W.2d 471 (Tex.Civ.App., Corpus Christi, 1965, n. w. h.); and Frick v. Duge, 413 S.W.2d 750 (Tex.Civ.App., Corpus Christi 1967, n. w. h.). There are implied findings of fact, therefore, that Guerra did not incur a disability to his leg greater than that for which he had been paid, hence no damage was established. The injury was confined to Guerra's right leg and involved a specific rather than a general injury. The only intendment to be gleaned from the implied findings is that Dr. Upshaw's representation to Guerra that his leg was 50% disabled was not shown to be an incorrect or untrue statement. Appellant, therefore, failed to establish venue fact Number 1, hereinabove mentioned, and did not bring his case within Subdivision 7, Art. 1995, V.A.C.S.

The only evidence appearing in the record concerning 100% disability relates to a letter written almost three years after the accident by Dr. Upshaw upon the re-

quest of Guerra. The letter reads as follows:

"April 18, 1967

TO WHOM IT MAY CONCERN:

Re: Alejandro Guerra

This patient had a severe injury to his right knee with destruction of the articulating surfaces. He is 100 per cent disabled insofar as his ability to work is concerned.

Signed

/s/ J. E. Upshaw, M. D.
J. E. Upshaw, M. D.

JEU:la"

This evidence when considered in the context of the entire record, is not enough to authorize this Court to set aside the implied findings in support of the judgment sustaining appellee's plea of privilege. Appellant's points are overruled.

The judgment of the trial court is affirmed.